**STATE of Arizona**

v.

**Michael Andrew ELMER.**

**No. CR 92–738 TUC JMR.**

United States District Court, D. Arizona.

Jan. 26, 1993.

D. Jesse Smith, Tucson, AZ, for plaintiff.

Michael L. Piccarreta Hirsh, Davis, Walker & Piccarreta, P.C., Tucson, AZ, for defendant.

## ORDER

ROLL, District Judge.

The Court has under advisement defense motions in limine to exclude certain prior bad act evidence.

Elmer, a Border Patrol Agent stationed at Nogales, Arizona, is currently awaiting trial on ten counts of aggravated assault in connection with the alleged unjustified firing of shots at a group of illegal aliens on March 18, 1992.

Elmer was recently acquitted by a federal jury of second degree murder, attempted murder, aggravated assault, and obstruction of justice in connection with events which occurred on June 12, 1992. *See* Cause No. CR 92–456 TUC JMR. Those charges and the instant charges were filed in state court but removed to federal court.

### *Rule 404(b) Evidence*

The state has given notice that it seeks to introduce evidence pursuant to Fed.R.Evid. 404(b) regarding the following prior bad acts:

1. Elmer's alleged diversion and use of cocaine and marijuana in October 1991;

2. Elmer's alleged firing of shots at drug traffickers on March 16, 1992, under circumstances other than self-defense;

3. Elmer's alleged statement to Agent Tom Watson on April 2, 1992, that Elmer "shot the face off a man in Morley Tunnel" in Nogales; and,

4. Elmer's killing of an unarmed man on June 12, 1992.

The defense vehemently objects to the admission of each of these matters.

### 1. Evidence of Drug Diversion and Use in October 1991

■ Through the testimony of two witnesses, Elmer's ex-wife and an informant whom the state admits is highly impeachable, the state seeks to introduce evidence that in the fall of 1991 Elmer found drugs, including cocaine, and diverted them to his own use.

No charges have ever been brought against Elmer concerning these matters. As of June 12, 1992, Elmer had not been suspended from his employment as a Border Patrol Agent as a result of these allegations. The state does not claim that Elmer used drugs at or near the time that the shots were allegedly fired by Elmer at the illegal aliens on March 18, 1992. During hearings on Elmer's pretrial motions in connection with his murder trial, counsel for the state indicated that the state did not intend to offer this evidence because there was no indication that Elmer had used drugs on that occasion and introduction of this unrelated evidence would surely result in reversal of any convictions obtained. Against this backdrop, the state now seeks to introduce this evidence.

The state contends that this evidence is admissible because Elmer may have fired the March 18, 1992, shots at the illegal aliens because he believed that they were carrying drugs and he hoped that they would drop the drugs and flee, thereby enabling him to divert the drugs for his own purposes. This argument is flawed.

At best, this highly prejudicial evidence constitutes proof of motive. The motive suggested is relatively weak. Other agents were present at the time the shots were fired and any attempted diversion would have been difficult. Furthermore, under this reasoning, every time Elmer tried to interdict drugs, he arguably did so in order to divert them for his own use rather than to enforce the laws of the United States.

■ While Fed.R.Evid. 402 provides that "[a]ll relevant evidence is admissible," Rule 403 provides that "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice …." In order to be admissible at trial, prior bad act evidence must be sufficient to support a finding by a jury that the defendant committed the act. *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

■ The Ninth Circuit has repeatedly stated that Rule 404(b) was designed to prevent the government from introducing extraneous evidence which may cause a jury to convict even in the absence of adequate proof of the crimes charged, merely because the defendant is a bad person. *United States v. Hill*, 953 F.2d 452, 457 (9th Cir.1991) (convictions for conspiracy to distribute cocaine and attempted possession of cocaine reversed due to erroneous admission of evidence that five years before alleged conspiracy, defendant used cocaine with witness); *United States v. Brown*, 880 F.2d 1012, 1014 (9th Cir.1989) (convictions for first degree murder and use of firearm during felony reversed due to erroneous admission of evidence of two prior acts involving firearms). When prior bad act evidence has minimal probative value in contrast to its unfairly prejudicial impact it should be excluded. *United States v. Bettencourt*, 614 F.2d 214, 218 (9th Cir.1980). This evidence is inadmissible.

### 2. Evidence of March 16, 1992, Assaults

■ The state has given notice that it intends to introduce evidence that two days prior to the alleged March 18, 1992, assaults, Elmer allegedly fired shots at several suspected drugtraffickers. These individuals dropped the drugs they were transporting and agents seized the drugs. The state contends that this incident constitutes proof of another occasion on which the defendant used deadly force other than in self-defense,

in violation of Arizona law. A.R.S. § 13–1204. This evidence is admissible at trial.

### 3. Elmer's Morley Tunnel Statement

■ The state next seeks to introduce testimony that on April 2, 1992, Elmer told Border Patrol Agent Tom Watson that he had "shot the face off a man" in Morley Tunnel, Nogales, Arizona. Morley Tunnel is a drainage passage between Nogales, Arizona, and Nogales, Sonora, Mexico. According to Watson, Elmer said that he weighted the body down to prevent its discovery.

At all times, Watson has maintained that he did not believe Elmer and viewed Elmer's claim as braggadocio. For his part, during his testimony at his murder trial Elmer denied that he had ever said anything to Watson regarding such a shooting. No body was ever found. The state concedes that no proof exists that this event ever occurred.

This evidence was admitted at Elmer's previous homicide trial. There, Watson claimed that Elmer intimidated him into not reporting the June 12, 1992, killing of Dario Miranda–Valenzuela. Because Elmer's statement about Morley Tunnel allegedly contributed to Watson's fear of Elmer, the statement was admissible. In the context of the current charges, however, it does nothing more than tend to prove that Elmer is a bad person and is therefore inadmissible.

### 4. Evidence of June 12, 1992 Homicide and Concealment

■ Finally, the state seeks to introduce evidence of the June 12, 1992, events.

A jury recently acquitted Elmer of the June 12, 1992, murder of Dario Miranda–Valenzuela and related charges. At that trial, evidence was presented that around 7:00 p.m. on June 12, 1992, while Elmer and other agents were on patrol in what was allegedly a drug-trafficking corridor just outside Nogales, Arizona, Elmer shot an unarmed citizen of the Republic of Mexico twice in the back.

Evidence was presented that prior to the shooting, three scouts for a drug load were conducting counter surveillance on the Border Patrol Agents. Agent Watson testified that he fired warning shots to scare off one of the alleged drug scouts. Other agents in the area testified to having heard Watson broadcast over the radio that the man was possibly armed. Watson denied this. However, Watson did testify that he broadcast to Elmer that the man was running in Elmer's direction. Elmer testified that he heard gunfire, heard Watson broadcast that the man appeared to be armed and was moving toward Elmer, then observed one of the scouts approaching. Elmer stated that he fired in self-defense in the direction of a tree where the man was positioned. Shortly thereafter, Watson joined Elmer and the body of Dario Miranda–Valenzuela was discovered. Elmer moved the deceased's body approximately fifty feet and Watson testified that Elmer told him not to report the matter and gestured in Watson's direction with a weapon. Neither Watson nor Elmer reported the matter that night, but the next day Watson informed a supervisor and Elmer was arrested by local sheriff's deputies.

■ Despite Elmer's acquittal on all charges, the state seeks to introduce this evidence at Elmer's aggravated assault trial. The state correctly points out that Elmer's acquittal is not necessarily a bar to the introduction of these matters pursuant to Rule 404(b). *Dowling v. United States,* 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). Nor is the fact that this evidence involves events occurring after the assaults for which Elmer will stand trial a reason compelling exclusion. *United States v. Bibo–Rodriguez,* 922 F.2d 1398, 1400 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2861, 115 L.Ed.2d 1028 (1991).

The state seeks to introduce evidence that on June 12, 1992, Elmer shot an unarmed alien twice in the back, attempted to conceal the body, and failed to report the firing of shots. The state indicates that it has no objection to the jury being informed that another jury found the defendant not guilty based upon self-defense. The state maintains that this evidence is admissible because it constitutes another occasion on which Elmer fired shots and failed to file a report thereof, as required by Border Patrol regulation. The state also suggests that it was as a result of these occurrences that the March

18, 1992, assaults came to light, and therefore this evidence completes the story of the March 18, 1992, assaults.

It is undeniable that this evidence is extremely prejudicial. While one solution may appear to be to merely restrict the state to proof that on June 12, 1992, Elmer fired shots and failed to file a report thereof, this result is inappropriate. Regardless of the various interpretations to which the evidence surrounding June 12, 1992, is susceptible, a jury has found Elmer not guilty based upon self-defense. Further, the circumstances under which shots were fired that day are only superficially similar to the circumstances of the alleged aggravated assaults on March 18, 1992.

Evidence of the killing of Dario Miranda–Valenzuela would, in all probability, seize and hold the jury's attention at trial. In *United States v. Fortenberry*, 860 F.2d 628, (5th Cir.1988), the Fifth Circuit reversed a defendant's convictions for conspiracy to commit arson, possession of an unregistered firearm, and transporting a firearm on a commercial airline, based upon the erroneous admission of prior bad acts including three cross-bow attacks and three arsons. In reversing the trial court's denial of defendant's motion for new trial, the Fifth Circuit states:

> In terms both of time in the courtroom and capacity to impress the jury, this tail wagged the dog.

860 F.2d at 632. It is just as clear that the June 12, 1992, evidence should be excluded.

For the foregoing reasons, IT IS ORDERED:

1. That defendant's motion to exclude evidence of the remote, unrelated, unreliable and highly prejudicial evidence of Elmer's alleged diversion of drugs six months prior to the alleged assaults is GRANTED.

2. That defendant's motion to exclude evidence of Elmer's alleged firing of shots at drug traffickers on March 16, 1992, under circumstances other than self-defense is DENIED;

3. That defendant's motion to exclude evidence of Elmer's alleged statement to Agent Tom Watson on April 2, 1992, that Elmer "shot the face off a man in Morley Tunnel" in Nogales is GRANTED; and,

4. That defendant's motion to exclude evidence of the events upon which the June 12, 1992, homicide charge was based is GRANTED.

*State's Appeal and Stay; Change of Venue*

Because these rulings result in the exclusion of evidence from the prosecution's case, the state may have the right to obtain pretrial appellate review of them. *See* 18 U.S.C. § 3731 (statute permitting appeal by United States of ruling by district court excluding evidence). Should the state wish to seek such review, the court will grant a stay of proceedings.

If the state does not seek pretrial appellate review of these proceedings, because of the pervasive, prejudicial publicity surrounding this defendant,

IT IS ORDERED that defendant's motion for change of venue is GRANTED and this matter will proceed to trial in United States District Court in Phoenix. The court has selected Phoenix rather than Prescott because the jury pool from which jurors in a Prescott trial would be selected would result in the underrepresentation of minorities.

IT IS FURTHER ORDERED that the trial set for February 4, 1993, is VACATED and RESET to March 8, 1993.