**STATE OF ARIZONA, Plaintiff–Appellant,**

v.

**Michael Andrew ELMER, Defendant–Appellee.**

**No. 93–10116.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 7, 1994.

Decided April 4, 1994.

Jessie Smith, Tucson, AZ, for plaintiff-appellant.

Michael Piccarreta, argued, Jefferson Keenan, on brief, Hirsch, Davis, Walker & Piccarreta, Tucson, AZ, for defendant-appellee.

Before: FLETCHER, KOZINSKI and TROTT, Circuit Judges.

TROTT, Circuit Judge:

This pretrial appeal arises out of an alleged shooting near Nogales, Arizona. The State of Arizona has charged former United States Border Patrol Agent Michael Elmer with ten counts of aggravated assault for allegedly shooting at 20 to 30 aliens who, on March 18, 1992, had crossed the Mexican border into the United States. Prior to trial, the State gave notice it intended to introduce evidence that Agent Elmer was involved in a subsequent similar shooting on June 12, 1992.

■ Agent Elmer filed a motion to exclude the evidence. The district court granted defendant's motion because it concluded the evidence was 1) only "superficially similar" to the charges on trial, 2) extremely prejudicial, and 3) would unduly seize the attention of the jury. *See State v. Elmer*, 815 F.Supp. 319, 323 (D.Ariz.1993). The State of Arizona appeals,[1] arguing the evidence: 1) is admissible under Federal Rules of Evidence 404(a)(1) and 405(b); 2) is admissible under Federal Rule of Evidence 404(b); and 3) should not be excluded under Federal Rule of Evidence 403. We hold that the district court did not abuse its discretion by excluding evidence of the June 1992 incident.

## I.

### A. The March Incident

According to the State of Arizona, on the evening of March 18, 1992, border patrol agents, in a joint operation with the National Guard, were patrolling the border for drug smugglers. Agent Elmer was equipped with night vision goggles and an M–16 automatic rifle with an infra-red targeting system. A group of aliens crossed the Mexican border into the United States. Because the group included women, the State alleges the agents should have known the aliens were not drug smugglers. Nevertheless, Elmer and other border patrol agents fired at the group for 5 to 10 minutes, hitting one of the aliens in the

leg. The aliens were given voluntary departures to Mexico the same night. None of the border patrol agents reported the incident.

Elmer's version of the facts differs. He claims the agents were expecting drug smugglers because they had received a confidential tip that a large shipment of cocaine was anticipated that night in that area. The agents suspected the aliens they shot at were the drug smugglers because they carried bundles and were in an area frequented by drug smugglers. Further, when border patrol agents announced their presence and told the aliens to stop, the aliens dispersed and began running in various directions. Elmer claims the agents fired a few warning shots in an attempt to get the aliens to abandon their suspected drug shipment and to prevent them from escaping. Once the aliens were apprehended, the agents realized they were merely undocumented workers and returned them to Mexico. Elmer concedes he violated border patrol regulations by failing to report the incident to his supervisor.

### B. The June Incident

State officials arrested Agent Elmer for shooting an unarmed suspect on June 12, 1992. On that night, Elmer allegedly shot a suspected drug smuggler twice in the back, failed to call for medical assistance, dragged the body 50 yards down a ravine to hide it, and never reported the incident. Further, the State claims Elmer threatened Thomas Watson, a border patrol agent who worked with Elmer that night, not to tell anyone about the incident. During Elmer's trial for the June shooting, Watson testified that he reported Elmer's actions the following morning, after ensuring his family's safety.

Elmer claims the June 12, 1992 shooting was in self-defense. According to Elmer, he and four other border patrol agents were anticipating a shipment of drugs across the border when the agents spotted what they

---

1. In *Arizona v. Manypenny*, 451 U.S. 232, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981), the Supreme Court held "that in a criminal proceeding removed to federal court, a State may appeal under § 1291 from an adverse judgment if statutory authority to seek such review is conferred by state law." *Id.* at 250, 101 S.Ct. at 1669. The Arizona Criminal Code specifically authorizes the State to appeal an "order granting a motion to suppress the use of evidence." Ariz.Rev.Stat. Ann. § 13–4032(6) (Supp.1993). This appeal is therefore proper.

thought were scouts. Agents Elmer and Watson set out to apprehend the suspects, but were separated and lost visual contact with one another. Elmer heard shots and received radio communications that the suspects were armed and that one was heading toward him. Elmer saw one of the suspects, wearing what he thought was a pistol in a holster, run toward him. Elmer claims he yelled at the suspect to stop, but the suspect kept running and veered toward some trees. Elmer then shot the suspect. Elmer suggests he concealed the body because Watson gave him erroneous advice that the suspect must be found with a gun in order for the shooting to be justified.

On July 22, 1992, while the Office of the Inspector General was investigating Elmer in connection with his arrest for this shooting, State officials received an anonymous letter notifying them of Elmer's involvement in the March incident. This was the first the State learned of the March incident.

### C. Prior Proceedings

■ Criminal charges arising from both incidents were eventually filed against Agent Elmer in Arizona state court. On Elmer's motion, the cases were removed to the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1442(a)(1). Therefore, federal rules of procedure and Arizona substantive criminal law will apply. *See Manypenny,* 451 U.S. at 241, 101 S.Ct. at 1664. The State filed a motion for joinder of the two cases, which the district court denied.

The case concerning the June shooting was the first to reach trial. The State of Arizona charged Elmer with second-degree murder, attempted murder, aggravated assault, and obstruction of justice. Elmer defended on grounds of self-defense, use of deadly force in law enforcement, and federal immunity. The jury returned a general verdict acquitting Elmer.

For his involvement in the March incident, the State charged Elmer with ten counts of aggravated assault. Prior to Elmer's trial on these charges, Arizona gave notice that it intended to introduce evidence of the June incident pursuant to Federal Rule of Evidence 404(b). Initially, the State of Arizona sought "to introduce evidence of what was uncontroverted at [the murder] trial; the number of shots fired, the site of the entry wounds, the distance between Elmer and the deceased, the failure to call for medical assistance, the failure to report the incident, the hiding of the body." (emphasis omitted). The district court held a suppression hearing, at which the State offered to limit the evidence by only introducing evidence that Elmer fired shots, did not report the incident, and hid the body.

Elmer argued the evidence was inadmissible under Federal Rules of Evidence 401, 402, 403, and 404. At the suppression hearing, Elmer's counsel stated that even if the jury were told about Elmer's acquittal for the murder charge, "it's going to be incumbent upon me defending him to give the jury the same flavor as the other jury had so they understand why he was acquitted, not just simply a judicial aberration or a jury mistake." This, he argued, would take considerable time.

The district court concluded that the evidence was of little probative value, would be extremely prejudicial, and would likely distract the jury from the March case. It granted defendant's motion to suppress. The State of Arizona appeals.

### II

#### A. Rules 404(a)(1) and 405(b)

■ Ordinarily, motions to suppress are reviewed de novo. *United States v. Thomas,* 863 F.2d 622, 625 (9th Cir.1988). The State argues evidence of the June 1992 incident is admissible under Federal Rules of Evidence 404(a)(1) and 405(b). The State did not assert this theory of admissibility before the district court, relying instead on Rule 404(b), evidence of other crimes, wrongs, or acts. If a party fails to state the specific grounds upon which evidence is admissible, the issue is not preserved for review, and the court of appeals will reverse only for plain error. *United States v. Muniz,* 684 F.2d 634, 640 (9th Cir.1982); *see also* Fed.R.Crim.P. 51, 52(b); *United States v. Sims,* 617 F.2d 1371, 1377 (9th Cir.1980); *United States v. Lara–*

*Hernandez,* 588 F.2d 272, 274 (9th Cir.1978). Accordingly we review the district court's ruling on the 404(b) issue de novo, and the 404(a)(1) and 405(b) issue for plain error.

The State argues evidence of the June incident is admissible under Rules 404(a)(1) and 405(b) because Elmer has placed his character for honesty in issue. Elmer plans to raise a federal immunity defense, says the State, which rests in part on a federal official's subjective belief that his or her conduct was necessary under the circumstances. *See Clifton v. Cox,* 549 F.2d 722, 729 (9th Cir. 1977) (if defendant shows " 'he had an honest and reasonable belief that what he did was necessary in the performance of his duty ... then he is entitled to the relief he seeks' ") (quoting *In re McShane,* 235 F.Supp. 262, 274 (N.D.Miss.1964) (emphasis omitted)). Because Elmer has placed his character for honesty in issue, the State argues, the prosecution may present evidence of specific instances of conduct pursuant to Rules 404(a)(1) and 405(b) to rebut his character. *See Michelson v. United States,* 335 U.S. 469, 475–80, 69 S.Ct. 213, 218–21, 93 L.Ed. 168 (1948); *United States v. Giese,* 597 F.2d 1170, 1190 (9th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979).

■ The State misconstrues the meaning of 404(a)(1). Elmer has not placed his character for honesty in issue because he has not offered evidence "of a pertinent trait of character," nor has he suggested he will.[2] *See Michelson,* 335 U.S. at 476, 69 S.Ct. at 218–19 ("[Defendant] may introduce affirmative testimony that the general estimate of his character is so favorable that the jury may infer that he would not be likely to commit the offense charged."). To fulfill the subjective element of the federal immunity defense, Elmer merely needs to show he *honestly believed* his actions were reasonable under the circumstances, *Clifton,* 549 F.2d at 728–29, not that he has an honest character.

**2.** "Ordinarily, when courts speak of an accused's putting his character in issue, it is assumed that the means by which he does so is introducing witnesses who testify *to his good character* in terms of reputation, or more currently, opinion." *Giese,* 597 F.2d at 1190 (emphasis added) (internal quotations omitted).

**3.** Federal Rule of Evidence 404(b) states:

■ Even if the State could introduce character evidence under Rule 404(a)(1), it could not use evidence of specific instances of conduct to do so. Rule 405(b) permits use of evidence of specific instances of conduct "[i]n cases in which character or a trait of character of a person *is an essential element* of a ... defense." Fed.R.Evid. 405(b) (emphasis added). Possessing an honest character is not an essential element of the federal immunity defense, *see Clifton,* 549 F.2d at 728, so evidence of Elmer's conduct on June 12 is inadmissible under Rule 405(b). Thus, because neither 404(a)(1) nor 405(b) permits the introduction of this evidence, there is no plain error.

### B. Rules 404(b) and 403

"The district court's construction of Fed. R.Evid. 404(b) is a question of law reviewed *de novo.*" *United States v. Robertson,* 15 F.3d 862, 869 (9th Cir.1994). "This court reviews for abuse of discretion the district court's decision to admit prior bad act evidence under Fed.R.Evid. 404(b)." *Id.; accord United States v. Miller,* 874 F.2d 1255, 1268 (9th Cir.1989). "We review the district court's decisions balancing the probative value of evidence against its prejudicial effect for abuse of discretion." *United States v. Kessi,* 868 F.2d 1097, 1107 (9th Cir.1989).

The State argues evidence of the June 1992 incident is admissible under Rule 404(b).[3]

The appropriate test to determine admissibility under Rule 404(b) ... provides: (1) *the other act evidence must tend to prove a material point;* (2) the other act must not be too remote in time; (3) the evidence must be sufficient to support a finding that the defendant committed the other act; and (4) in some cases, the other act must be similar to the offense charged.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

*United States v. Bibo–Rodriguez,* 922 F.2d 1398, 1400 (9th Cir.) (emphasis added), *cert. denied,* — U.S. ——, 111 S.Ct. 2861, 115 L.Ed.2d 1028 (1991); *see also United States v. Mayans,* 17 F.3d 1174, 1178 (9th Cir.1994); *Robertson,* 15 F.3d at 869–70; *United States v. Pitts,* 6 F.3d 1366, 1370 (9th Cir.1993); *Miller,* 874 F.2d at 1268.

"[W]e have emphasized consistently that evidence of extrinsic acts may not be introduced unless the government establishes its relevance to an actual issue in the case." *United States v. Hodges,* 770 F.2d 1475, 1479 (9th Cir.1985). The State's only argument concerning the relevance of the June shooting is that Elmer's actions—shooting the suspect and covering up the incident—tend to prove Elmer is not honest. However, Elmer's honesty is not an issue in the case, *see supra,* and the State has not established its relevance to an actual issue in the case. *See Hodges,* 770 F.2d at 1479.

"Furthermore, even when all of the other requirements of 'extrinsic acts' evidence are met, the evidence may be accepted only if, on balance, its probative value is not substantially outweighed by the danger of unfair prejudice to the defendant." *Id.; accord Robertson,* 15 F.3d at 869–70; *United States v. Ramirez–Jiminez,* 967 F.2d 1321, 1325 (9th Cir.1992); *see also* Fed.R.Evid. 403.[4]

■ The State argues that the district court applied the incorrect standard because it concluded the evidence was "extremely prejudicial," not "unfairly prejudicial." We do not "require a mechanical recitation of Rule 403's formula on the record as a prerequisite to admitting evidence under Rule 404(b)." *United States v. Bradshaw,* 690 F.2d 704, 709 (9th Cir.1982) (internal quotations omitted), *cert. denied,* 463 U.S. 1210, 103 S.Ct. 3543, 77 L.Ed.2d 1392 (1983). It is clear the judge was referring to "unfair prejudice."

Although a more clearly articulated statement balancing probativeness and prejudice would have been desirable, it appears from the record that the district court did the

necessary weighing before suppressing the proffered evidence. *See id.* The judge's statements at the suppression hearing indicate that he considered the evidence to be of little probative value. Furthermore, the written order states: "It is undeniable that this evidence is extremely prejudicial.... Evidence of the killing ... would, in all probability, seize and hold the jury's attention at trial." *Elmer,* 815 F.Supp. at 323. The district judge did not abuse his discretion by excluding the evidence under Rule 403.

The district court order is AFFIRMED.

---

**4.** Federal Rule of Evidence 403 states:

   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.