**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Warren S. CHANG, Defendant–
Appellant.**

**No. 97–50518.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 7, 2000

Filed April 4, 2000

William S. Harris, Stewart & Harris, Pasadena, California, for the defendant-appellant.

Nancy B. Spiegel, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

Before: TROTT,* RYMER, and FISHER, Circuit Judges.

FISHER, Circuit Judge:

Warren H.S. Chang appeals his conviction and sentence for conspiracy, uttering a counterfeit foreign obligation and possessing a counterfeit foreign obligation. On appeal, Chang challenges certain evidentiary rulings made by the district court, contends that the evidence presented against him at trial was insufficient to sustain part of his conviction and argues that the sentence imposed by the district court is illegal. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm the conviction but vacate Chang's sentence and remand for re-sentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 25, 1996, a federal grand jury indicted Chang and a co-defendant, Harry New Blum, on three separate counts: (1) conspiracy, in violation of 18 U.S.C. § 371 ("Count One"); (2) uttering, passing, and putting off, in payment or negotiation, a counterfeit foreign obligation or security, in violation of 18 U.S.C. § 479 ("Count Two"); and (3) possessing a counterfeit foreign obligation or security, in violation of 18 U.S.C. § 480 ("Count Three").

These charges resulted from the two men's activities relating to a particular

---

* Judge Trott was drawn to replace Judge Wiggins. He has read the briefs, reviewed the record, and listened to the tape of oral argument held on February 7, 2000.

Japanese "Certificate of Payback Balance" with a face amount of 300 billion Japanese yen (the "Certificate"). Chang, who was Chairman for the Western Division of Panorama Foundation Limited (the "Panorama Foundation"), a Hong Kong corporation, during the period in question, testified that he acquired the Certificate on behalf of the Panorama Foundation in November 1993. Chang enlisted Blum to assist him in negotiating potential business transactions relating to the Certificate, and the co-defendants pursued such transactions until their arrest in February 1996. In particular, Chang and Blum negotiated a transaction with Midland Bank whereby the Certificate would be used as collateral for a loan.

Chang and Blum were tried concurrently. The government contended at trial that the co-defendants' activities were illegal because (a) the Certificate was counterfeit, (b) both defendants knew that the Certificate was counterfeit and (c) both defendants had negotiated various transactions involving the Certificate and, therefore, had uttered the Certificate with an intent to defraud.

The government's case centered around a series of events involving the Midland Bank transaction and the co-defendant's dealings with BNY Western Trust Company ("BNY") relating thereto. On October 18, 1995, Chang and Blum met with, among others, James L. Birdwell, BNY's Vice President of Operations, to discuss the possibility of (a) BNY acting as custodian of the Certificate in connection with the Midland Bank transaction and (b) BNY issuing an asset statement showing that BNY held the Certificate in its possession. At the October 18 meeting, both Chang and Blum represented that they would provide BNY with documentation establishing the Certificate's authenticity. After the October 18 meeting, Birdwell had reservations about the Certificate, so he contacted the FBI to verify that the

proposed transaction was legitimate. The FBI informed Birdwell that it believed the Certificate to be counterfeit, and Birdwell agreed to cooperate in the FBI's investigation. On February 28, 1996, Chang and Blum again met with Birdwell and others at BNY's office in Los Angeles. The FBI recorded and videotaped the meeting. At the meeting, Chang and Blum showed the original Certificate to Birdwell and produced a black light to demonstrate the watermark and other aspects of the Certificate that, according to Chang and Blum, established its authenticity. The FBI arrested Chang and Blum at the conclusion of the meeting.

Both Chang and Blum insisted throughout trial that, at all times during their negotiations with BNY, Midland Bank and others, they believed the Certificate to be authentic. Chang testified that he had taken several steps to establish the Certificate's authenticity, both before and after acquiring the Certificate in 1993. Further, Chang and Blum pointed to the fact that the FBI previously had questioned each of them separately regarding the Certificate, but had not seized the Certificate, as an additional basis for their belief that the Certificate was authentic. Chang also attempted to introduce expert testimony from Edmond Lausier, an assistant professor of clinical marketing at the University of Southern California, to counter the government's evidence that the Certificate was counterfeit.[1] On December 9, 1996, the jury convicted both Chang and Blum on all three counts. At sentencing, the district court ordered Chang confined to prison for 63 months on Count One, 36 months on Count Two, and 12 months on Count Three, all three terms to be served concurrently.

## DISCUSSION

### I. Exclusion of Professor Lausier's Expert Testimony

Professor Lausier, Chang's only proffered expert witness, would have opined

---

1. Blum did not argue at trial that the Certificate was, in fact, authentic; rather, he claimed that he had relied on Chang's representations that the Certificate was authentic.

that the Certificate was genuine, and his testimony would have directly contradicted the government's contention that the Certificate was counterfeit. If Chang had been able to prove the Certificate's authenticity, he would have been acquitted on all charges; therefore, Lausier's testimony, if properly admitted, would have been a key element of Chang's defense.

■ We review the district court's exclusion of Lausier's testimony for an abuse of discretion. *See, e.g., United States v. Scholl,* 166 F.3d 964, 971–72 (9th Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 176, 145 L.Ed.2d 149 (1999).

The Federal Rules of Evidence provide that expert testimony should be admitted only if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. To qualify as an expert, a witness must have "knowledge, skill, experience, training, or education" relevant to such evidence or fact in issue. *Id.* Further, evidence that is otherwise admissible under Rule 702 "may be excluded if its probative value is substantially outweighed by the danger of . . . confusion of the issues, . . . undue delay, [or] waste of time. . . ." Fed.R.Evid. 403. We view "[t]he admissibility of expert testimony [as] a subject peculiarly within the sound discretion of the trial judge, who alone must decide the qualifications of the expert on a given subject and the extent to which his opinions may be required." *Fineberg v. United States,* 393 F.2d 417, 421 (9th Cir.1968). Thus, although Professor Lausier's testimony was a key element of Chang's defense, we accord a high degree of deference to the district court's findings regarding Professor Lausier's qualifications and the relevance of his proffered testimony to the issues presented at trial.

### A

■ The district court heard testimony, outside the presence of the jury, to determine whether Professor Lausier was qualified to testify as an expert witness. Although Lausier admitted that he had no formal training in identification of counterfeit securities, Chang argued that Lausier was qualified to testify because he had expert knowledge regarding the history of, and purpose for, the issuance of obligations like the Certificate. The district court rejected Chang's argument, ruling that (1) "the [only] fact in issue is the authenticity of [the Certificate]"; (2) "whether such things were ever in fact validly issued" was not relevant; and (3) Professor Lausier's testimony would not be admitted because he was not qualified to opine as to the authenticity of the specific instrument at issue, the Certificate. The district court also ruled that Lausier's testimony would be "a complete waste of the jury's time."

Chang contends the district court conceded that Professor Lausier was well-qualified to testify as to the "underlying indicia of authenticity"[2] but improperly excluded the testimony because Lausier was unable "to opine on the ultimate question." Chang cites *United States v. Rahm,* 993 F.2d 1405 (9th Cir.1993), in which an expert's testimony was excluded, in part, because she was unable to form a conclusive opinion based on the facts presented to her. *See id.* at 1411–12. We reversed in *Rahm,* stating that trial courts "may not seek—or require—conclusiveness" in considering "the strength of an expert's opinion." *Id.* at 1412. But *Rahm* is clearly distinguishable because Lausier intended to testify that the Certificate was authentic, so the district court could not have been concerned with the conclusiveness of his opinion. Rather, the district court

2. This somewhat misstates the trial record. Although the district court acknowledged that Lausier was "extremely qualified" in international finance, it refused to accept Chang's argument that Lausier's proffered testimony could establish the Certificate's "underlying indicia of authenticity." Thus, the district court ruled that Lausier's background knowledge was not relevant to determining the authenticity of the Certificate itself.

properly rejected the qualifications upon which Professor Lausier was to base his conclusion, given that he had no experience in identifying counterfeit foreign securities.

Chang also cites *Rahm* for the proposition that it is reversible error to exclude expert testimony pertaining to a defendant's "sole intended defense," *id.* at 1415, here the authenticity of the Certificate. This is not an accurate characterization of the defense's case. Chang's principal defense at trial was that he believed the Certificate to be genuine (thereby negating an intent to defraud), not that the Certificate was, in fact, genuine. Lausier's expert testimony was proffered only to support the latter defense.[3]

In addition, Chang argues that (a) the district court should not have required specific knowledge regarding the identification of counterfeit securities and (b) Professor Lausier's "practical experience in international finance" was sufficient to qualify him as an expert. Lausier did not have the requisite "knowledge, skill, experience, training, or education" required by Rule 702; he did not testify as to any training or experience, practical or otherwise, detecting counterfeit securities. It was not an abuse of discretion for the district court to determine that Lausier's "practical experience in international finance" did not amount to practical experience determining whether a particular security is counterfeit, the fact at issue in this case.

█ Chang also argues that Professor Lausier's testimony was relevant to rebut the government's expert witness, United States Secret Service Special Agent Samuel A. Tong, who testified that he believed the Certificate to be counterfeit. In particular, Chang asserts that Lausier's testimony was necessary to rebut Tong's testimony regarding the Japanese government's standard practices relating to obligations analogous to the Certificate. In effect, Chang contends that, even if Lausier was not qualified to opine as to the authenticity of the Certificate, Lausier should have been allowed to testify as to the Japanese government's general practices in issuing obligations similar to the Certificate in order to rebut Tong's "external" testimony regarding the Certificate. But Tong's testimony focused on the particular aspects of the Certificate that supported his opinion that the Certificate was counterfeit, not the history and background of the issuance of securities like the Certificate. On redirect, Tong also testified that his area of expertise was printing and manufacturing and that he did not purport to be a finance expert or historian of Japanese securities, thereby further limiting the scope of his testimony. Lausier was not qualified to opine as to the particular aspects of the Certificate or to dispute the techniques used by Tong in evaluating the Certificate; therefore, the district court did not abuse its discretion by excluding Lausier's expert testimony offered for rebuttal purposes.

Finally, the district court stated as an additional, independent ground for its exclusion of Professor Lausier's expert testimony that Lausier "was not picked as an initially neutral party," expressing concern that Professor Lausier had assisted Chang in his efforts to authenticate the Certificate prior to trial and was, in effect, a "biased" expert witness. Chang asserts that any such bias should go to weight rather than admissibility. In *Hingson v. Pacific S.W. Airlines,* 743 F.2d 1408 (9th Cir.1984), we held that testimony "otherwise admissible under Rule 702" is not precluded simply because of a relationship between the witness and one of the parties. *Id.* at 1412. Because the district court properly found Professor Lausier's testimony inadmissible under Rule 702 on grounds independent of its bias concern,

---

**3.** At a later point in the trial proceedings, Chang did try to call Lausier, as a percipient witness, for the purpose of corroborating Chang's state of mind argument. The district court refused to allow Lausier to testify, and Chang does not appeal the district court's ruling.

we do not find this aspect of the district court's ruling rises to the level of reversible error.

B

Our conclusion that the district court properly excluded Professor Lausier's testimony is consistent with *United States v. Blum*, No. 97–50228, 1999 WL 801513 (9th Cir.1999) (unpublished disposition), in which we rejected Blum's appeal of this same issue. Our determination in *Blum* also governs as the law of this case. *See, e.g., United States v. Melvin*, 91 F.3d 1218, 1224 n. 3 (9th Cir.1996); *United States v. Schaff*, 948 F.2d 501, 506 (9th Cir.1991).

## II. Sufficiency of Evidence

Count Two charged that Chang "knowingly and with the intent to defraud, uttered, passed and put off in payment and negotiation a false, forged, and counterfeit bond, certificate, obligation, security and promise to pay of a foreign government . . ., namely [the Certificate]." Chang argues that the evidence was insufficient to establish that he "uttered, passed and put off in payment and negotiation" the Certificate. The evidence supporting Chang's conviction on Count Two was sufficient if, "viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Symington*, 195 F.3d 1080, 1088–89 (9th Cir.1999).

▮ Scant case law exists on the meaning of "utter" in this context. It is clear, however, that an "utterance" is tantamount to an offer. *See, e.g.,* Black's Law Dictionary 1547 (6th ed.1990) (utter means, among other things, "to offer").

▮ The record, when viewed in the light most favorable to the government, supports the conclusion that Chang uttered, or offered, the Certificate to BNY on or before February 28, 1996. Birdwell, the Vice President of Operations of BNY, testified that he could have taken possession of the Certificate at the conclusion of his February 28 meeting with Chang and

Blum. The defense disputed Birdwell's testimony because the required custody agreement had not been executed, but Birdwell testified on cross-examination that BNY used a standard form custody agreement and, therefore, the agreement could have been executed at that meeting. Further, we note that (a) Chang brought the original Certificate to the meeting and (b) Chang had authority to sign the custody agreement on behalf of the Panorama Foundation. We hold that the jury could have rationally concluded (as did Birdwell) that a firm offer had been made.

Chang argues it would have been insufficient for the jury to have found that Chang "uttered" the Certificate to BNY because BNY, as a trust institution, does not negotiate instruments. Chang asserts that a bailment is not an utterance and that he only intended to place the Certificate in BNY's vaults for safekeeping. Chang relies on *United States v. Mitchell*, 26 F. Cas. 1276 (C.C.D.Pa.1831) (No. 15,787), which establishes that "depositing . . . for safe keeping [sic], is not an uttering." *See id.* In *Mitchell*, however, the court explained that its conclusion was based on the underlying premise that a deposit for safekeeping typically is not undertaken *with an intent to defraud. See id.* ("There must be an intent to pass it as good."); *see also* 18 U.S.C. § 479 (criminalizing only those utterances in which there is an "intent to defraud"). Thus, *Mitchell* does not support Chang's argument that his "bailment" to BNY cannot constitute a criminal "utterance" under § 479. *See Mitchell*, 26 F. Cas. at 1276 ("Uttering . . . is a declaration that the note or order is good, or an offer to pass it as good." (citation omitted)). Chang represented to BNY that the Certificate was authentic in order to induce BNY to insure the Certificate at its full face value and to issue an asset statement describing the Certificate—in other words, with the intent to defraud BNY. Chang also offered the Certificate to BNY in an effort to defraud Midland Bank, given that the Midland Bank transaction was conditioned

upon placement of the Certificate with BNY. *Cf. United States v. Mucciante*, 21 F.3d 1228, 1235 (2d Cir.1994) ("[T]he intent element of the offense is satisfied so long as [the defendant] possessed 'a general intent that some innocent third party in the chain of distribution be defrauded.'" (quoting *United States v. Anzalone*, 626 F.2d 239, 244 (2d Cir.1980))). Therefore, there was sufficient evidence to find Chang guilty of uttering the Certificate to BNY.

Alternatively, the evidence presented at trial supported the conclusion that Chang uttered, or offered, the Certificate to Midland Bank (as opposed to BNY). Chang admits that Midland Bank was a prospective offeree of the Certificate. Chang argues, however, that no "offer" to Midland Bank occurred because placement of the Certificate with BNY was a condition precedent to that offer. But, viewing the evidence in the light most favorable to the government, the jury rationally could have found that Chang, on behalf of the Panorama Foundation, offered the Certificate to Midland Bank. The financing agreement that was to govern the transaction with Midland Bank was admitted into evidence at trial, as was evidence that the parties were very close to consummating the deal. While placement of the Certificate with BNY was a condition precedent to *completion* of the transaction with Midland Bank, it was not a condition precedent to *offering* the Certificate to Midland Bank. The evidence supports the finding that the Panorama Foundation, through Chang and his representatives, made a firm offer to Midland Bank—an offer that would not be accepted until all the requirements set forth in the financing agreement (including placement of the Certificate with BNY) were in place.

Thus, whether characterized as an offer to BNY or to Midland Bank, we hold that the evidence was sufficient to sustain Chang's conviction for uttering a counterfeit foreign security.

### III. "Uttering" Jury Instruction

Chang also objects to the instruction given the jury regarding the meaning of the term "uttering" as set forth in his indictment. The challenged instruction provided that "the term 'uttering' means to make or attempt to make use of any written or printed instrument with intent to defraud. . . ." Chang argues that it was improper for the district court to instruct the jury that an "attempt to make use" of the Certificate was sufficient to constitute an utterance.[4]

Chang concedes that this issue was not properly preserved for appeal; therefore, we may review the jury instruction only for plain error. *See Jones v. United States*, 527 U.S. 373, 119 S.Ct. 2090, 2102, 144 L.Ed.2d 370 (1999). The relevant inquiry under the plain error standard is whether the error is "clear" or "obvious" and "'affect[s] substantial rights.'" *United States v. Olano*, 507 U.S. 725, 731–35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quoting Fed.R.Crim.P. 52(b)). This is a very high standard, under which we must find that it is "highly probable that the error materially affected the verdict" before reversing. *United States v. Kessi*, 868 F.2d 1097, 1103 (9th Cir.1989).

We conclude that reversal on this grounds is not merited. In doing so, we need not determine whether an utterance of an instrument is, in all cases, tantamount to an "attempt to make use of" that instrument or whether such an instruction is sufficient to support conviction of a defendant for uttering a counterfeit foreign security. Regardless, there is ample evidence in this case to support our finding that the jury instruction error (if there was any such error) did not affect the

---

4. Presumably, this instruction often is given by district courts in "utterance" cases under 18 U.S.C. § 472, which is the more common charge because it covers counterfeit United States securities. But the jury instructions developed for § 472 cases must be utilized in § 479 cases with caution because § 472 includes "attempt[ing] to pass [or] utter" whereas § 479 does not.

jury's verdict. "The adequacy of jury instructions is determined by examining them in their entirety." *United States v. Harris,* 738 F.2d 1068, 1072 (9th Cir.1984). Subsequent jury instructions—which are not objected to by Chang on appeal—further explained the term "utter" and placed it in a context in which it is highly likely that the verdict would have remained the same even if the language to which Chang objects had been removed.

One such instruction told the jury that "[o]ne utters an item in payment or negotiation if he offers the item to another while representing that the item is genuine, ... in an effort to ultimately receive money or other things of value in exchange for the item." As discussed previously, the evidence supported a finding by the jury that Chang (a) offered the Certificate to BNY or Midland Bank, (b) while representing it was authentic and (c) with the ultimate goal of receiving money from Midland Bank or insurance and an asset statement from BNY. Thus, the "attempt to make use of" language of the disputed instruction is tempered with the language of the second instruction, which informed the jury that an "attempt to make use of" must amount to an "offer." The district court's instruction was not plainly erroneous.

### IV. Hearsay Exclusion

Chang also appeals the exclusion under the hearsay rule of his proffered testimony that the Security Information Center (the "SIC"), a federal agency, had assigned an identifying number to the Certificate. Chang argues that the SIC's alleged assignment of a registration number amounts to an admission by the government that the Certificate was genuine and that, as such, Chang's testimony was not hearsay. *See* Fed.R.Evid. 801(d)(2).

■ Chang failed to preserve this issue for appeal. Chang never informed the district court that he was offering the testimony in question as a party-opponent admission (or for any other nonhearsay purpose or under any exception to the hearsay rule, for that matter), and this theory of admissibility was not apparent from the context of his testimony. "If a party fails to state the specific grounds upon which evidence is admissible, the issue is not preserved for review, and the court of appeals will reverse only for plain error." *Arizona v. Elmer,* 21 F.3d 331, 334 (9th Cir.1994); *accord United States v. Sims,* 617 F.2d 1371, 1377 (9th Cir.1980) (applying plain error standard to hearsay exclusion because the alternative grounds for admission raised on appeal were not presented to the district court). Therefore, the exclusion of Chang's testimony may be reviewed only for plain error.

■ Chang relies on Rule 801(d)(2)(D) to support his argument that his proffered testimony was not hearsay. Rule 801(d) provides in pertinent part:

> A statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by the party's agent ... concerning a matter within the scope of the agency or employment, made during the existence of the relationship....

"Rule 801(d)(2)(D) requires the proffering party to lay a foundation to show that an otherwise excludable statement relates to a matter within the scope of the agent's [agency or] employment." *Breneman v. Kennecott Corp.,* 799 F.2d 470 (9th Cir. 1986); *accord Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1440 (9th Cir.1990). As the proponent of the evidence, Chang had the burden to demonstrate this foundational requirement. *See Merrick,* 892 F.2d at 1440. Chang did not proffer his party-opponent admission theory of admissibility at trial; therefore, he took no steps toward establishing that the proffered testimony would have been within the scope of the SIC's agency. Chang cannot (and does not) argue that he satisfied this burden, given that he proffered *no* evidence at trial to establish the foundation for admissibility. Thus, there was no error, much less plain error, in the district court's ex-

clusion of the proffered evidence under the hearsay rule.

 Chang also argues that the SIC-related testimony should have been admitted as additional, nonhearsay evidence of the various sources upon which he relied in determining that the Certificate was authentic and, ultimately, as evidence of his state of mind. This argument is without merit because evidence of the SIC's alleged actions' effect on Chang's state of mind was admitted at trial. The district judge allowed the following exchanges between Chang and his lawyer to remain on the record:

Q. "Did you place any reliance on the assignment of a CUSIP number?"

A. "Yes."

Q. "Is there any other reason why you relied upon it?"

A. "This gave me proof that this is a certificate and it does exist."

Any further questions offered to establish the same point would have been cumulative, so their exclusion was not plainly erroneous.

### V. Sentencing Error

The final issue raised by Chang is whether the prison sentence imposed for his conviction on Count One is illegal because it exceeds the statutory maximum established by 18 U.S.C. § 371. The legality of a sentence imposed by a district court is reviewed de novo. *See, e.g., United States v. Garcia*, 112 F.3d 395, 397 (9th Cir.1997).

The district court sentenced Chang to a total prison term of 63 months, consisting of individual sentences of 63 months on Count One, 36 months on Count Two and 12 months on Count Three, all to be served concurrently. The sentences imposed for Counts Two and Three equal the statutory maximums established for those offenses, *see* 18 U.S.C. §§ 479, 480, but, as the government concedes, the sentence imposed for Count One exceeds the statutory maximum dictated for that offense, *see* 18 U.S.C. § 371 (five years maximum imprisonment).

Given that Chang's sentence clearly exceeds the statutory maximum established under § 371, we vacate Chang's sentence and remand to the district court for resentencing.

### CONCLUSION

Based on the foregoing, we AFFIRM the judgment entered against Chang but VACATE his sentence and REMAND FOR RESENTENCING.