**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 1 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellee, | Nos. 99-3144, 99-3154 |
| v. | D. Kan. |
| MARK HENRY ALLERHEILIGEN, | (D.C. No. 97-40090-01-DES) |
| Defendant-Appellant. | |

**ORDER AND JUDGMENT** *

Before **BALDOCK** , **HENRY** , and **LUCERO** , Circuit Judges.

The appellant, Mark Henry Allerheiligen, entered a conditional plea of no contest to possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). The district court gave Mr. Allerheiligen safety valve credit and sentenced him to a term of imprisonment of 41 months.

Mr. Allerheiligen appeals, asserting error in the following: (1) denial of his motion to suppress; (2) exclusion of videotape evidence that would allegedly

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

depict wild marijuana growing in the same area from which the government seized cultivated marijuana plants over a year after the seizure; (3) exclusion of testimony from three proffered expert witnesses on the differences between marijuana grown for personal use versus distribution; (4) exclusion of expert testimony regarding Mr. Allerheiligen's psychological and/or psychiatric condition; (5) denial of his motion to exclude testimony regarding evidence the government had seized but not preserved; and (6) breach of the plea agreement. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and, for reasons discussed below, affirm Mr. Allerheiligen's conviction and sentence.

## I.  BACKGROUND

On the morning of August 27, 1997, at the request of Marshall County Sheriff Kenneth Coggins, Special Agent David Christy of the Kansas Bureau of Investigation (KBI) flew over Mr. Allerheiligen's farm property in a fixed-wing aircraft.  Special Agent Larry Dixon and Sheriff Coggins were also present in the aircraft at that time.

Mr. Allerheiligen's property is located in a rural area in Marshall County, Kansas.  During the fly-over, Agent Christy caught sight of what he believed to be several hundred cultivated marijuana plants in a clearing in the trees behind a

residence. Agent Christy also observed a two-story white house and five out buildings.

From the aircraft, and using a Cannon T-50 camera with a 35 to 85mm lens, Agent Christy photographed the clearing containing what he believed to be marijuana plants and a pathway leading from the plants to a fence which contained a gate at the back of a barn. He also photographed the residence and out buildings.

Two days later, using the open field doctrine, Agents Dixon and Sabel and Sheriff Coggins walked into the marijuana field and made the following observations: numerous marijuana plants had been broken off 10-12 inches above the ground; one plant had been pulled and had a grow cup (pot cup) still attached to the root system; a fairly new candy wrapper was found in the marijuana patch; there was a foot trail leading from the marijuana patch to a gate; and the marijuana patch was within a fenced-off area with barbed wire and other fence encasing it.

On September 2, 1997, Agent Christy submitted an affidavit to the magistrate judge containing all of the aforementioned facts in support of an application for a warrant to search the property, including Mr. Allerheiligen's residence, all out buildings, and any other structures with foot trails leading to or

from the marijuana field. Based on the information Agent Christy submitted, the magistrate judge issued the warrant.

The warrant was executed the following day. Agents discovered marijuana in four different areas — three separate outdoor patches and an indoor marijuana grow room. The agents seized 782 marijuana plants from the patch north of Mr. Allerheiligen's barn, 232 plants from the patch near a corn crib, 143 plants from the patch south of a marijuana grow shed, and 19 plants from the indoor grow room.

The agents additionally seized 179 dead plants from one of the outdoor patches as evidence that Mr. Allerheiligen had "sexed" the plants by removing only the male plants and leaving the females. The officers testified that the majority of plants seized contained peat pot matter within the root system, which is indicative of cultivated marijuana that is started in a peat pot and later transplanted to the ground.

In the indoor marijuana grow room, agents located "bags of miracle grow, potting soil, 57 pots to transplant plants, 23 plant trays and approximately 10 pots that had previously been used." App. vol. VIII, at 9 (Presentence Report). In the grow room, lights, an air conditioner, and a fan were being regulated on a timer. Other items seized during the search of Mr. Allerheiligen's property included a

book on marijuana botany, a marijuana grower's guide, balance scales, marijuana seeds, a suitcase containing marijuana residue, and numerous weapons.

Mr. Allerheiligen filed a motion to suppress, raising various challenges to the constitutionality of the search of his property. On June 1, 1998, the district court held an evidentiary hearing, following which the court denied the motion.

Both the government and Mr. Allerheiligen filed pre-trial motions seeking to exclude evidence. The court conducted an evidentiary hearing on these motions. In a subsequent written order, the court granted the government's motion in limine, thereby excluding expert testimony on Mr. Allerheiligen's psychological and/or psychiatric condition and testimony regarding the videotapes allegedly depicting wild marijuana on his property over a year after the seizure. The court also excluded the proffered expert testimony of Ed Rosenthal, William Logan, and Walt Carroll regarding the differences between wild and cultivated marijuana and the condition of his property after the seizure. The court denied Mr. Allerheiligen's motion to exclude testimony regarding marijuana plants and peat pots the government had not preserved.

On November 3, 1998, prior to trial, Mr. Allerheiligen entered into a plea agreement with the government. Pursuant to this agreement, Mr. Allerheiligen pleaded guilty to the § 841(a)(1) charge but reserved the right to appeal most of the pretrial rulings. The government, in turn, agreed to a contested sentencing

hearing on the number of marijuana plants attributable to Mr. Allerheiligen. The government further agreed not to oppose application of the safety valve, pursuant to 18 U.S.C. § 3553(f) and USSG §5C1.2, if the probation officer who prepared the presentence report determined it to be appropriate.

The presentence report attributed 1,346 marijuana plants to Mr. Allerheiligen. The probation officer who authored the report approved application of the safety valve. However, in a chambers conference prior to sentencing, the court advised both parties' counsel that it would not be inclined to award safety valve credit if Mr. Allerheiligen contested the number of plants which had been attributed to him in the presentence report.

Consequently, Mr. Allerheiligen withdrew his objections to the number of plants attributed to him in the presentence report and received safety valve credit. The court sentenced him to 41 months' imprisonment.

## II. DISCUSSION

### A. Motion to Suppress

When reviewing a district court's denial of a motion to suppress, we consider the totality of the circumstances and view the evidence in the light most favorable to the government, accepting the district court's factual findings unless they are clearly erroneous. See United States v. Long, 176 F.3d 1304, 1307 (10th

Cir. 1999). "The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court." Id. "[T]he ultimate determination of reasonableness under the Fourth Amendment[, however,] is a question of law" we review de novo. Id.

### 1. Material Falsehoods or Omissions in the Affidavit

Mr. Allerheiligen contends Agent Christy provided false and misleading information to the magistrate in his affidavit underlying the search warrant. A search warrant must be voided and the fruits of the search excluded where a defendant establishes by a preponderance of the evidence that the affiant knowingly or recklessly submitted false statements or omitted information material to the magistrate's finding of probable cause. See United States v. Kennedy, 131 F.3d 1371, 1376 (10th Cir. 1997) (citing Franks v. Delaware, 438 U.S. 154, 155-56 (1978) and Stewart v. Donges, 915 F.2d 572, 581-82 (10th Cir. 1990)). The burden, therefore, falls upon the defendant to establish "the affiant in fact entertained serious doubts as to the truth of his allegations." Bruning v. Pixler, 949 F.2d 352, 357 (10th Cir.1991) (internal quotations omitted).

Recklessness may be inferred where the omitted information was "clearly critical" to the probable cause determination. DeLoach v. Bevers, 922 F.2d 618, 622 (10th Cir.1990) (internal quotations omitted). Mere negligence or innocent

mistake is insufficient to void a warrant.    See Franks, 438 U.S. at 171;  see, e.g.,

United States v. Clapp, 46 F.3d 795, 800-801 (8th Cir. 1995).

"Whether false statements or omissions are intentional or reckless is a factual finding reviewed under the clearly erroneous standard.  Whether misstatements and omissions are material to a finding of probable cause is subject to de novo review."  United States v. Dozier, 844 F.2d 701, 705 (9th Cir. 1988) (citations omitted).

### a.    The Altitude of the Fly-over

Mr. Allerheiligen contends Agent Christy falsely stated in his affidavit that he flew over Mr. Allerheiligen's property at an altitude of approximately 1,000 feet.  He asserts the "uncontradicted scientific evidence shows" Agent Christy was flying at approximately 300 feet.  Aplt's Br. at 11-12.  Mr. Allerheiligen further argues that a fly-over conducted at an altitude of 300 feet violated his Fourth Amendment rights.

Contrary to Mr. Allerheiligen's assertion, the evidence of Agent Christy's actual altitude during the fly-over presented at the suppression hearing was contradictory.  Jerry G. Cusick testified as an expert for the defense that one of Agent Christy's photographs of Mr. Allerheiligen's property had been taken at an altitude of 231 feet, and that two others had been taken from approximately 360

feet.  Agent Christy, however, testified that he was flying at an altitude of 1,000 feet.  He explained that his assessment of the altitude during the fly-over was based on his altimeter.  On cross-examination Agent Christy admitted that his altimeter "could have been out of certification" because there is no certification requirement for altimeters on the type of aircraft he was flying.  App. vol. IV, at 29.  However, he also testified that he had no reason to believe that his altimeter was not working properly.

After considering both witnesses' testimony, the district court nevertheless found that the fly-over occurred at an altitude of approximately 1,000 to 2,000 feet, and therefore, under California v. Ciraolo, 476 U.S. 207 (1986), Mr. Allerheiligen's Fourth Amendment rights had not been violated.  Although we are troubled by the great disparity in testimony regarding the altitude at which Agent Christy conducted the fly-over, we must "not disturb a sentencing court's factual findings unless they are without factual support in the record, or if after reviewing all the evidence we are left with the definite and firm conviction that a mistake has been made."  United States v. Moore, 130 F.3d 1414, 1416 (10th Cir. 1997) (internal quotations omitted).

Here, the court's finding that the fly-over occurred at approximately 1,000 feet is supported in the record by Agent Christy's testimony.  We must give

substantial deference to the district court's decision to judge Agent Christy's testimony as more credible than that of the defendant's expert, Mr. Cusick.

Further, we note, as did the district court, that the Supreme Court has approved of aerial surveillance at an altitude as low as 400 feet. See Florida v. Riley, 488 U.S. 445, 451-52 (1989). Moreover, we agree with the district court that the photographs Agent Christy took of Mr. Allerheiligen's property during the fly-over "'are not so revealing of intimate details as to raise constitutional concerns.'" App. vol. I, at 214 (quoting Dow Chem. Co. v. United States, 476 U.S. 227, 238 (1986)).

Thus, our review of the record does not leave us "with the definite and firm conviction that a mistake has been made." United States v. Bautista, 145 F.3d 1140, 1146 (10th Cir. 1998). Accordingly, we conclude the court's finding was not clearly erroneous. [1]

---

[1] Because we defer to the court's factual finding that the fly-over was conducted at approximately 1,000 feet, we do not address Mr. Allerheiligen's argument that a fly-over at approximately 300 feet is a Fourth Amendment violation of his private airspace. However, we do note our court has held that a helicopter search of marijuana gardens at "an altitude substantially less than five hundred feet" does not violate the Fourth Amendment where the marijuana gardens are located in open fields and thus not part of the curtilage of the defendant's home. United States v. Swepston, 987 F.2d 1510, 1512, 1515-16 (10th Cir. 1993). Here, Mr. Allerheiligen does not challenge the court's finding that the marijuana was located in an open field not within the curtilage of his home.

### b. Other Alleged Falsehoods and Omissions in the Affidavit

Mr. Allerheiligen alleges Agent Christy submitted other materially false or misleading statements in the affidavit. In support of these allegations, Mr. Allerheiligen directs us to Agent Christy's testimony at the suppression hearing, as well as that of other witnesses, arguing they contradict Agent Christy's assertions in his affidavit and therefore prove such assertions are false or misleading. However, this evidence is unconvincing and fails not only to prove the statements were false or misleading, but it fails to establish that the statements were material to the determination of probable cause. See Kennedy , 131 F.3d at 1375.

First, Mr. Allerheiligen alleges Agent Christy lied about not observing any wild marijuana on his property during the fly-over. His only evidence in support of the falsity of this statement is testimony from various witnesses that wild marijuana is prevalent in the area generally, especially along the creek bed that runs south of Mr. Allerheiligen's property. The testimony from these witnesses does not establish Agent Christy's statement was knowingly false or misleading. See Kennedy , 131 F.3d at 1376. Agent Christy did not deny the existence of wild marijuana in the area, rather, he only submitted that he did not observe any on Mr. Allerheiligen's property during the fly-over. See, e.g. , United States v.

Searcy, 181 F.3d 975, 980 (8th Cir. 1999) ("Minor errors in the warrant which do not reflect deliberate falsehoods are insufficient to mandate suppression . . . .").

Second, Mr. Allerheiligen takes issue with Agent Christy's statement in the affidavit that "[t]he plants and paraphernalia are located in an area which were not visible from the county roadway and had a distance that would make normal gardening very laborious." App. vol. I, at 44 (Aff. of Agent Christy). Specifically, he argues use of the word "paraphernalia" was misleading. In support of this argument he points to Agent Christy's testimony that "paraphernalia" referred only to a garden hose he observed next to the barn during the fly-over and a peat pot the agents observed when they walked through the marijuana patch. Although use of the word "paraphernalia" may have been somewhat of an overstatement, Mr. Allerheiligen points to nothing in the record to suggest Agent Christy chose that word with the intention of misleading the magistrate. Moreover, there is no evidence that use of the word "paraphernalia" was material to the magistrate's finding of probable cause.

Finally, Mr. Allerheiligen contends Agent Christy's ability to discern between wild and cultivated marijuana required viewing the tops of the plants, and, therefore, his failure to include this fact in his affidavit underlying the search warrant was a material omission. In support of this contention, he relies on Agent Christy's testimony at the suppression hearing that "the plants that [he]

saw were not consistent with plants that grow naturally on this continent. The plants [he] observed had round tops, rather than pointed." App. vol. IV, at 11. He further argues the photographs, as well as Agent Christy's own testimony, illustrate that he could not have made such an identification at an altitude of 1,000 feet.

Again, this argument is without merit. The district court found Agent Christy had observed both wild and cultivated marijuana on over 300 separate occasions and had fourteen years of experience in aerial identification of marijuana. Nothing in Agent Christy's testimony during the suppression hearing suggested that viewing the tops of the plants is the only means by which to distinguish cultivated from wild marijuana. In fact, in the affidavit Agent Christy stated he believed the plants he observed were cultivated, as opposed to wild, based partly on the fact that "[t]he height, the shape and dissimilar shade of green . . . [was] consistent with [his] previous observations of growing cultivated marijuana." App. vol. I, at 123 (Aff. of Agent Christy). Agent Christy's testimony does not conflict with his statements in the affidavit. Thus, there is no support for the contention that Agent Christy omitted any material information.

Further, Mr. Allerheiligen has presented no evidence that Agent Christy could not distinguish between rounded and pointed tops from 1000 feet. Contrary to Mr. Allerheiligen's position, during his testimony at the suppression

-13-

hearing, Agent Christy did not retreat from his statement in the affidavit that he could identify cultivated marijuana plants through aerial surveillance. Rather, he only conceded that his identification from the air could never be certain. Accordingly, the district court did not err in rejecting Mr. Allerheiligen's contentions of material falsehoods and omissions in the affidavit. See United States v. Haimowitz, 706 F.2d 1549, 1556 (11th Cir. 1983).

## 2. There was probable cause to search the residence.

Mr. Allerheiligen asserts there was insufficient evidence of probable cause to search his residence. [2] He contends "none of the information in [Agent] Christy's affidavit that was gathered from his fly-over or from the Kansas officers' invasion of [his] property during the walk-in can properly be relied upon in testing the sufficiency of the warrant." Aplt's Br. at 15.

---

[2] Within his probable cause challenge, Mr. Allerheiligen makes additional allegations that Agent Christy submitted false or misleading statements in the affidavit underlying the search warrant. For instance, he asserts the "foot path" the agents allegedly observed during the walk-in was really a cattle path. Moreover, he asserts the statement in the affidavit that the marijuana patch was in a fenced-off area was misleading because the fencing was around the entire pasture, not just the marijuana patch. However, we conclude that, "[d]isregarding the[se] allegedly false [or misleading] statements in [the] affidavit, the other evidence presented by the government amply supported a finding of probable cause." United States v. Salameh, 152 F.3d 88, 114 (2d Cir. 1998); see United States v. Myers, 106 F.3d 936, 940 (10th Cir. 1997).

-14-

It is true that, in order to determine whether the search warrant was valid and issued upon probable cause, the supporting affidavit must be analyzed without facts that are tainted by prior illegality. See United States v. Anderson, 981 F.2d 1560, 1568 (10th Cir. 1992). However, we have already concluded the aerial search over Mr. Allerheiligen's property did not violate his constitutional rights. We have further concluded there is no evidence to support Mr. Allerheiligen's assertion that Agent Christy intentionally misled the magistrate in his affidavit underlying the search warrant. Therefore, we may consider Agent Christy's observations during the fly-over in testing the sufficiency of the warrant.

Moreover, the district court found the walk-in on Mr. Allerheiligen's property was constitutional. The court reasoned the marijuana field was an "open field" not within the curtilage of Mr. Allerheiligen's home and, therefore, was not entitled to Fourth Amendment protection. Mr. Allerheiligen does not challenge this finding on appeal. Thus, we may consider the agents' observations during the walk-in in testing the sufficiency of the warrant.

Probable cause means that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). We give great deference to the magistrate's determination of probable cause and will uphold that conclusion if the "totality of the

information contained in the affidavit provided a substantial basis for finding there was a fair probability that evidence of criminal activity would be found." United States v. Janus Industr., 48 F.3d 1548, 1553 (10th Cir. 1995) (internal quotations omitted).

In the affidavit, Agent Christy submitted that during aerial surveillance he observed what he believed to be several hundred cultivated marijuana plants in a clearing behind Mr. Allerheiligen's residence. He furthered stated that he observed a pathway leading from the plants to a fence which contained a gate at the back of a barn. Agent Christy's affidavit also relayed the following observations by the agents who performed the walk-in: there were numerous marijuana plants broken off ten to twelve inches above the ground, one plant that had been pulled had a peat pot still attached to the root, and there was a fairly new candy wrapper in the marijuana patch.

The agents' observations during the walk-in, coupled with those made by Agent Christy during the fly-over, clearly support the magistrate's finding of probable cause to search Mr. Allerheiligen's residence. See, e.g., United States v. Emmons, 24 F.3d 1210, 1215 (10th Cir. 1994) (affirming probable cause determination in part because "the judge who issued the warrant was certainly entitled to consider the large quantity of marijuana discovered during the two expeditions onto [the defendant's] property, an amount totally at odds with purely

personal consumption" and rejecting the defendant's "argu[ment] that even if the marijuana could give rise to an inference of distribution, it could not fairly be inferred that evidence would be found in his home."); United States v. Morehead, 959 F.2d 1489, 1499 (10th Cir. 1992) (holding that "officers' observations of marijuana plants in the trailer and shop building adjacent to the [defendant's] residence" provided a substantial basis for the conclusion that there was a fair probability that evidence of a crime would be found on the property); United States v. Wilson, No. 97-5201, 1998 WL 482786, at ** 3 (10th Cir. Aug. 12, 1998) ("The affiant's statement that during an aerial fly-over he viewed marijuana plants on land where Defendant resided and the other statements in the affidavit that Defendant exhibited behavior consistent with those involved in the production of marijuana established a fair probability that a crime was being committed and support a finding of probable cause"); United States v. Malin, 908 F.2d 163, 166 (7th Cir. 1990) (upholding magistrate's probable cause finding where the affidavit underlying the warrant to search the defendant's house did not directly link the marijuana observed by officers to the house or cite any evidence of cultivation), abrogation on other grounds recognized in United States v. Monroe, 73 F.3d 129 (7th Cir. 1995); United States v. Fuesting, 845 F.2d 664, 671 (7th Cir. 1988) (stating "probable cause existed for the search given the

observations of the officers in the helicopter"). Accordingly, we conclude that the district court did not err in denying the motion to suppress.

**B. Exclusion of videotape evidence allegedly depicting the condition of Mr. Allerheiligen's property a year after the seizure**

The crux of Mr. Allerheiligen's defense was that he cultivated only a few marijuana plants for personal use and that the rest of the marijuana seized by the government was wild. Prior to trial, Mr. Allerheiligen disclosed to the prosecution a list of witnesses, some of whom would testify regarding two videotapes allegedly depicting approximately 1,500 wild marijuana plants growing on his farm in September of 1998, approximately a year after the seizure.

The government filed a motion in limine to exclude this evidence under Federal Rule of Evidence 403. In granting the government's motion the court reasoned that "evidence that there was wild marijuana growing on some portion of defendant's property on September 9, 1998, over a year after the search warrant was executed, is irrelevant to the allegations contained in [the] Indictment." App. vol. III, at 126 (Order, dated Nov. 19, 1998).

We review a district court's decision to exclude relevant evidence under Federal Rule of Evidence 403 for abuse of discretion. See United States v. Castillo , 140 F.3d 874, 884 (10th Cir. 1998). Pursuant to this rule, "relevant

evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Here, the district court noted that the government admitted wild marijuana grows annually in numerous rural areas in Marshall County, Kansas, where Mr. Allerheiligen's property is located. Moreover, in the presentence report the probation officer agreed with Mr. Allerheiligen that "there were likely wild marihuana plants growing in the marihuana patchs [sic] which were seized from the defendant's property." App. vol. VIII, at 13, ¶ 37. However, the report further "concluded that [Mr. Allerheiligen] had adopted those marihuana plants as his own and cared for them as he did the plants that he personally planted" and, therefore, those plants were attributable to him. Id. Thus, the existence of wild marijuana in the area was not in dispute, thereby, demonstrating the minimal probative value of the proffered videotape evidence. Moreover, evidence regarding the condition of Mr. Allerheiligen's property a year after the seizure would likely have confused the issues or misled the jury.

Finally, the KBI made a videotape and took photographs of Mr. Allerheiligen's property during the marijuana seizure in 1997. Mr. Allerheiligen has not offered any legitimate explanation as to why the 1997 KBI videotape and

photographs do not accurately reflect his property on the day of the seizure. Accordingly, we find no abuse of discretion in the court's decision to exclude any evidence regarding the 1998 videotapes allegedly depicting Mr. Allerheiligen's property a year after the seizure. Cf., United States v. Culpepper, 834 F.2d 879, 883 (10th Cir. 1987) (upholding the trial court's denial of defendant's request to allow the jury to view the marijuana field two months after the seizure because rain had changed the field's condition and because there were undisputed photographs of the field on the day of the seizure).

**C.** **Exclusion of Expert Witnesses Offered to Testify as to the Differences Between Marijuana Grown for Personal Use Versus Distribution**

As stated previously, Mr. Allerheiligen's defense was that he only planted a few marijuana plants for personal use, not distribution. Because possessing a large quantity of drugs is a strong indicator of intent to distribute, he set out to prove he did not cultivate the 1,346 marijuana plants attributed to him. See, e.g., United States v. Wood, 57 F.3d 913, 918 (10th Cir. 1995) ("A large quantity of the drug will support a reasonable inference that a defendant intended to distribute it."); United States v. Eng, 753 F.2d 683, 687 (8th Cir. 1985) ("The harvesting of [over thirteen pounds] of marijuana is inconsistent with Eng's personal use claim.").

In support of his defense Mr. Allerheiligen sought to present three expert witness, Ed Rosenthal, Walt Carroll, and William Logan, to testify regarding the differences between marijuana grown for personal use and marijuana grown for commercial distribution. The district court excluded all three of Mr. Allerheiligen's expert witnesses, finding they were not qualified to testify on the subject matter of their proffered testimony. Mr. Allerheiligen contends exclusion of all three expert witnesses was in error.

A district court may allow expert testimony "[i]f [the expert's] scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The Supreme Court has held that Rule 702 imposes a special obligation upon a trial judge to ensure that all expert testimony, even non-scientific and experience-based expert testimony, is both relevant and reliable. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999); Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592-93 (1993).

In Daubert, the Court stated that, in determining reliability, the trial judge may consider: (1) whether a "theory or technique . . . can be (and has been) tested"; (2) whether it "has been subjected to peer review and publication"; (3) whether, in respect to a particular technique, there is a high "known or potential rate of error" and whether there are "standards controlling the technique's

operation"; and (4) whether the theory or technique enjoys "general acceptance within a relevant scientific community." 509 U.S. at 593-94.

However, the Supreme Court has stressed that "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho Tire , 526 U.S. at 152. "Thus, whether Daubert's specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." Id. at 153. Accordingly, a trial judge's ruling on the admission or exclusion of expert testimony will not be overturned unless it is manifestly erroneous or an abuse of discretion. See General Elec. Co. v. Joiner , 522 U.S. 136, 142 (1997); United States v. Diaz , 189 F.3d 1239, 1246 (10th Cir. 1999).

### 1. Ed Rosenthal

At the hearing on the government's motion to exclude Mr. Rosenthal's testimony, defense counsel made a lengthy proffer regarding Mr. Rosenthal's qualifications and the subject matter of his testimony. In essence, Mr. Rosenthal would have testified "about the quantity and quality of marijuana plants which distinguishes personal use from commercial cultivation" and "the anticipated

yield of the marijuana seized from [Mr. Allerheiligen's] property." App. vol. II, at 110 (Defendant's Witness List).

Mr. Rosenthal proffered similar testimony in United States v. Kelley, 6 F. Supp.2d 1168, 1179-85 (D. Kan. 1998), which the court excluded. In Kelley, the court's decision to exclude the testimony was based on its finding that he was not qualified to testify on the issues of yield, intent, general practices of outdoor marijuana growers, and processing and use of marijuana in Kansas. See id. at 1184-85.

The decision in Kelley was based in part on transcripts of Mr. Rosenthal's testimony in State v. Hood and United States v. Wyman & Hadley, D. Kan. No. 94-40038-01/02-RDR. In Hood the court characterized Mr. Rosenthal's testimony as a "serious disappointment" and "ideologically driven to the point where [the court thought Mr. Rosenthal] had no objectivity at all." Kelley, 6 F. Supp.2d at 1183-84 (quoting Trans. Aug. 20, 1993, p.171). Similarly, in Wyman and Hadley the court expressed regret over allowing Mr. Rosenthal to testify. Specifically, Judge Rogers voiced concern over Mr. Rosenthal's qualifications and referred to his work as "almost voodoo research." Id. at 1184 (quoting Trans. January 27, 1995, at 98-100).

Here, the district court similarly "observe[d] several areas where [Mr.] Rosenthal's purported testimony extend[ed] beyond his demonstrated areas of

specialized knowledge." App. vol. III, at 130. In excluding Mr. Rosenthal's testimony, the court explained:

> Even given the additional substantial information regarding [Mr.] Rosenthal provided to this court by the parties, the fact that [Mr.] Rosenthal writes books on marijuana growing and regularly writes a popular advice column for *High Times* magazine does not tell the court anything about the scientific reliability of his opinions expressed therein. There is no evidence that any of [Mr.] Rosenthal's writings on marijuana have been recognized as a valid research effort or reference book in the field of botany. Nor is there anything of record that would lead this court to believe that it should rely on readers of *High Times* magazine or others having an interest in growing marijuana as a valid indicator of reliability.
>
> Based upon the court's opinion in <u>Kelley</u>, the transcript from <u>Wyman and Hadley</u> and the affidavit of Dr. Mahmoud A. ElSohly, the Director of the Marijuana Project at the University of Mississippi since 1980, the court finds that [Mr.] Rosenthal's qualifications are largely a matter provable only through his own opinion. He lacks any academic background, formal education or training, and experience that would qualify him as an expert on the subject of growing, harvesting, and processing of marijuana. His unique exposure to these topics is limited to his self-directed efforts at reading reference works, talking with some researchers and growers, and then summarizing the work of others in to popular "how-to" guides.

<u>Id.</u> at 130-31.

The district court undertook a careful and thorough review of Mr. Rosenthal's qualifications and proffered testimony. In light of the "considerable leeway" we give trial judges "in deciding in a particular case how to go about determining whether particular expert testimony is reliable," we conclude the court's decision to exclude Mr. Rosenthal's testimony was not an abuse of

discretion.  Kumho Tire , 526 U.S. at 152;  see, e.g. , Taylor v. Cooper Tire & Rubber Co. , 130 F.3d 1395, 1397 (10th Cir. 1997) (affirming district court's exclusion of expert testimony where, although the expert "was qualified generally in materials failure, particularly metals," the court found the expert was not qualified to testify as to the critical issue of whether "the tire failure in [the] case was the result of a manufacturing defect");  Broadcort Capital Corp. v. Summa Med. Corp. , 972 F.2d 1183, 1195 (10th Cir. 1992) (concluding exclusion of expert testimony was not an abuse of discretion where "[t]he district court found that [the expert's] general experience and education did not qualify [him] as an expert in the securities area.");  United States v. Chang , 207 F.3d 1169, 1173 (9th Cir. 2000) (holding "[i]t was not an abuse of discretion for the district court to determine that [the proffered expert's] 'practical experience in international finance' did not amount to practical experience determining whether a particular security is counterfeit, the fact at issue in th[e] case.").

## 2.    Walt Carroll and William Logan

Mr. Allerheiligen argues the court also erred in excluding expert witnesses Mr. Carroll and Mr. Logan.  Neither Mr. Carroll nor Mr. Logan appeared at the hearing on the government's motion to exclude both witnesses' testimony.

Instead, Mr. Allerheiligen submitted their respective resumes and submitted a proffer of their testimonies.

Mr. Carroll has been a law enforcement officer for over twenty-five years and has served as an expert witness and training instructor in the area of drug detection, inderdiction and prosecution of drug cases. Mr. Allerheiligen submitted that Mr. Carroll would "testify as to the presence of wild marijuana on the Allerheiligen property; evidence of spraying in the marijuana field; his observations during his inspection of the Allerheiligen property in 1997; pictures taken by him of the Allerheiligen property; [and] all other issues addressed in [Mr. Carroll's] report and affidavit." App. vol. II, at 108. Mr. Allerheiligen asserts Mr. Carroll's testimony was significant because he inspected Mr. Allerheiligen's property two weeks after the search and found no evidence of cultivation.

Mr. Logan is a criminal defense lawyer. He has called Mr. Rosenthal to testify on behalf of his clients in various cases. Mr. Allerheiligen sought to call Mr. Logan to "testify to [the] defining elements which constitute personal use of marijuana" and "the expected yield of the marijuana seized." App. vol. II, at 109. After reviewing the proffered evidence, the court concluded "that the purported testimonies of [Mssrs.] Logan and Carroll extend[ed] beyond their respective demonstrated areas of specialized knowledge." App. vol. III, at 151.

As with Mr. Rosenthal, the court found that "the information provided to [it] by the defendant t[old] the court nothing about the scientific reliability of the opinions proffered by [Mssrs.] Logan and Carroll."      Id.

With respect to Mr. Carroll, the court found that his "credentials evidence no training, experience or schooling in matters specifically related to marijuana identification, marijuana eradication, marijuana processing, [and] marijuana use." Id. Moreover, the court found nothing in the record to justify relying on "Mr. Carroll's perusal of [Mr. Allerheiligen's] property after [the marijuana seizure] . . . as evidence of the yield of the plants seized."      Id. at 152. As to Mr. Logan, the court stated, "[t]here is nothing of record that would lead this court to believe that it should rely on Mr. Logan's former clients, members of the California criminal defense bar, California marijuana users or the readers of his articles as a valid indicator of reliability."      Id.

The court carefully and meticulously reviewed the proffer of evidence submitted by Mr. Allerheiligen in support of Mssrs. Carroll and Logan, ultimately finding their proffered testimonies were not scientifically reliable. Our review of the record supports that finding. As stated previously, "the law grants the trial judge broad latitude to determine" what are "reasonable measures of reliability." Kumho Tire , 526 U.S. at 123. Accordingly, we conclude the court's decision to

exclude the testimony of Mr. Carroll and Mr. Logan was not an improper exercise of its discretion.

**D.     Exclusion of Expert Testimony Regarding Defendant's Mental and Physical Condition**

On the defense witness list, Mr. Allerheiligen listed Dr. Stuart Twemlow as an expert witness who would have testified as to Mr. Allerheiligen's "physical, medical and psychological condition." App. vol. II, at 110. Dr. Twemlow examined Mr. Allerheiligen pursuant to a court ordered evaluation as a condition of his pre-trial release. The defense also listed Dr. Matthew Schlotterback, who would have testified as to his knowledge of Mr. Allerheiligen's "medical history." Id. The government's motion in limine sought to exclude the testimony of both witnesses.

The district court granted the government's motion, finding that the "[Mr. Allerheiligen's] true intent [was] to offer a 'justification' defense through the use of this testimony." App. vol. III, doc. 101, at 122. Mr. Allerheiligen had represented on the Omnibus Hearing Report that his sole defense was "general denial; put the government to proof," and did not list "justification as a defense." Thus, the court found that allowing the testimony would violate the Omnibus Hearing Report. Additionally, the court found the proffered testimony was akin to a medical necessity defense, which is not a proper defense to possession of

marijuana with intent to distribute, the charge at issue in this case. Finally, the court found the testimony was irrelevant and collateral to the issues at trial and therefore would confuse and distract the jury. Upon this finding, the court excluded the testimony pursuant to Federal Rules of Evidence 401, 402, and 403.

On appeal, Mr. Allerheiligen asserts the court's finding that the testimony was offered as a justification or medical necessity defense was in error. He maintains the testimony was not offered to prove justification or to negate intent, but rather solely to prove he only grew a few marijuana plants for personal use, not distribution. Moreover, the testimony was relevant because it was offered to bolster the credibility of Mr. Allerheiligen's statements to KBI agents during the search of his property that he only grew a few marijuana plants for personal use.

As explained in the previous section, we review the exclusion of expert testimony for abuse of discretion and we will not overturn the court's decision unless it is manifestly erroneous. See General Elec. Co., 522 U.S. at 142; Diaz, 189 F.3d at 1246. Without deciding whether all of the court's reasons for excluding the proffered testimony were proper, we affirm the court's decision to exclude the testimony pursuant to Rule 403. Under Rule 403, "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by

considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

At the hearing on the government's motion to exclude testimony on Mr. Allerheiligen's psychiatric condition and medical history, defense counsel proffered the following testimony:

> [Mr. Allerheiligen] has a medical condition that causes chronic pain since the late 60s. [He] tried various prescription medications. [He] has a psychiatric/psychological problem that does not amount to the size of a problem as a bipolar disorder, but it causes extreme hyperactivity and periods of depression similar to what we would call manic depression . . . . He's had it since birth. . . . And only recently [Dr. Twemlow] has confirmed through his treatment and care of [Mr. Allerheiligen] that that disorder exists.

> [Mr. Allerheiligen] is currently on enough medication to shock almost anybody. . . . It maintains him at a level of functioning that allows him to participate on a day-to-day basis with his wife and his family and society. That is the type of testimony we anticipate out of [Dr. Schlotterback] and [Dr. Twemlow].

> This is not a new problem. It's a longstanding problem. It's a problem, which for almost 30 years he monitored and treated himself with marijuana. He has readily admitted that. That's never been an issue in this case.

App. vol. V, at 54-55.

The probative value of the proffered testimony on Mr. Allerheiligen's psychiatric condition and medical history was minimal at best. Establishing Mr. Allerheiligen is a chronic user of marijuana is only marginally relevant to

whether he intended to distribute the large quantity of marijuana found on his property.

Further, the minimal probative value of this testimony is substantially outweighed by the likelihood it would inject collateral issues at trial that would confuse and mislead the jury.    See Fed. R. Evid. 403.  Regardless of Mr. Allerheiligen's true purpose for this testimony,

> psychiatric evidence (1) will only rarely negate specific intent, (2) presents an inherent danger that it will distract the jury from focusing on the actual presence or absence of mens rea, and (3) may easily slide into wider usage that opens up the jury to theories of defense more akin to justification, [therefore,] district courts must examine such psychiatric evidence carefully to ascertain whether it would, if believed, support a legally acceptable theory of lack of mens rea.

United States v. Cameron   , 907 F.2d 1051, 1067 (11th Cir.1990) (internal quotations and citations omitted)    .

Moreover, Mr. Allerheiligen had acknowledged throughout that he is a chronic marijuana user and had already admitted to growing at least some of the marijuana on his property for personal use.  As defense counsel conceded, Mr. Allerheiligen's personal use of marijuana has "never been an issue in this case." App. vol. V, at 55.  Thus, the proffered testimony was also partly cumulative. Accordingly, the district court's exclusion of the proffered psychiatric and medical history testimony under Rule 403 was not an abuse of discretion.

**E.      Evidence the Government Seized but Allegedly Failed to Preserve**

The presentence report attributed 1,346 marijuana plants to Mr. Allerheiligen.    See App. vol. VIII, at 14, ¶ 44.  Mr. Allerheiligen alleges the government only seized a representative sample of these plants and failed to seize, preserve, or record any of the peat pots on the plants.  Although Mr. Allerheiligen has framed the issue on appeal as whether "the district court abused its discretion in denying [his] motion to exclude testimony about evidence the government had seized but not preserved," his entire argument is evidently dedicated to the legal proposition that the government's alleged failure to preserve exculpatory evidence, i.e., the marijuana plants and the peat pots, denied him due process.  After reviewing the record, we conclude Mr. Allerheiligen never presented this argument to the district court.

The motion Mr. Allerheiligen submitted to the district court was entitled "Motion In Limine To Exclude Testimony About Evidence Which Has Not Been Preserved And To Prohibit Any Testimony Regarding Opinions Based On Scientific, Technical, Or Other Specialized Knowledge."  App. vol. III, at 1. Within this motion, Mr. Allerheiligen argued that because the government did not designate any witnesses as experts on its witness list, the witnesses should be prohibited from testimony based on scientific, technical or specialized knowledge under Federal Rule of Evidence 702.  He asserted that, as a result of the

government's failure to designate any of the witnesses as experts, the proposed witnesses should be limited to testimony based on perception only, as opposed to opinion, as required under Rule 701. Accordingly, he argued, no witnesses should be allowed to speculate as to the number of cultivated marijuana plants or peat pots present on Mr. Allerheiligen's property during the seizure that were not videotaped, photographed, recorded or otherwise preserved.

Although the motion contains a citation to California v. Trombetta, 467 U.S. 479 (1984), which outlines the standard for determining when the government's failure to preserve, or destruction of, evidence violates due process, it is cited for the more general proposition that "[t]he government has a duty to preserve all evidence that is expected to play a significant role in a suspect's defense." App. vol III, at 3. The motion makes no allegation of a due process violation, nor does it attempt to argue the elements of the Trombetta test. More importantly, Mr. Allerheiligen never alleged in his motion that the government failed to preserve or destroyed exculpatory evidence, which is the sole focus of Mr. Allerheiligen's argument on appeal.

The district court's order lends support to our construction of Mr. Allerheiligen's motion. In denying the motion, the court explained:

> After establishing to the court's satisfaction that a witness can offer an opinion as a lay witness under Federal Rule of Evidence 701, witnesses may testify to their relevant observations, upon proper foundation, whether contained

in a report or not. If an agent offers testimony not contained in a report, this may be inquired into on cross-examination to challenge the credibility of the statement. This goes to the weight of the evidence and not to its admissibility.

App. vol. III at 147 (Order, Nov. 19, 1998). The court made no mention of Mr. Allerheiligen's current due process argument and did not discuss or cite to any cases regarding such.

Because Mr. Allerheiligen failed to raise his due process argument to the district court, our review is limited to plain error. See United States v. Orr, 864 F.2d 1505, 1508 (10th Cir. 1988) ("On appeal we will only consider the specific ground of the evidentiary objection in the trial court, unless the ground not raised constitutes plain error resulting in manifest injustice.") (internal quotations omitted); see also Goulah v. Ford Motor Company, 118 F.3d 1478, 1483 (11th Cir. 1997) ("An objection on one ground will not preserve an error for appeal on other grounds."). Plain error is that which affects substantial rights and undermines the "fairness, integrity, or public reputation of judicial proceedings." Johnson v. United States, 520 U.S. 461, 466-67 (1997). The plain error doctrine is to be "'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" United States v. Oberle, 136 F.3d 1414, 1422 (10th Cir. 1998) (quoting United States v. Frady, 456 U.S. 152, 163 n. 14 (1982)). Mr. Allerheiligen cannot establish plain error occurred here.

Specifically, Mr. Allerheiligen takes issue with the government's failure to preserve the peat pots. He argues, "[h]ad [the government] seized all of the marijuana plants with peat pots, it would have either supported [his] claim that he only planted 12-15 plants, or disproved such a claim." Aplt's Br. at 27. However, to establish a violation of § 841(a)(1), the government did not need to prove Mr. Allerheiligen actually planted the marijuana, only that he possessed it with the intent to distribute. See United States v. Silver, 84 F.3d 1317, 1321-22 (10th Cir. 1996); App. vol. V, at 41 (defense attorney acknowledging Mr. Allerheiligen "[didn't] have to grow [the marijuana] in order to possess it with the intent to distribute"). Moreover, the existence or lack of peat pots was not necessary to attribute the marijuana plants to Mr. Allerheiligen for purposes of sentencing. As stated previously, the presentence report concluded Mr. Allerheiligen "had adopted [the wild] marihuana plants as his own and cared for them as he did the plants that he personally planted," and, therefore, considered those plants in determining his base offense level. App. vol. VIII, at 13, ¶ 37. Thus, the peat pot evidence was only potentially exculpatory.

When potentially exculpatory evidence has not been preserved, in order to establish a due process violation, the defendant must show the government acted in bad faith. See United States v. Gomez, 191 F.3d 1214, 1219 (10th Cir. 1999) (citing Arizona v. Youngblood, 488 U.S. 51, 58 (1988)). Here, Mr. Allerheiligen

alleges "the Kansas and federal authorities were well aware of the importance of the number of plants seized," and "the methodology used to count the plants . . . was unclear and uncertain." Aplt. Br. at 29. He further argues the government's explanation for failing to preserve all of the marijuana plants including the peat pots, namely, lack of storage space and difficulty in pulling each plant, evinces bad faith.

We are not convinced that this evidence alone is sufficient to establish the government acted in bad faith. See United States v. Deaner, 1 F.3d 192, 201 (3d Cir. 1993) (concluding that even though the government destroyed seized marijuana because of limited storage space instead of retaining a representative sample as required by statute, the defendant could not establish bad faith); United States v. Beldon, 957 F.2d 671, 673-74 (9th Cir. 1992) (concluding the government did not act in bad faith where officers pulled marijuana plants from their pots or cut them above the roots, and failed to preserve the root systems because it was routine police practice and there was a lack of storage space); see, e.g., Gomez, 191 F.3d at 1219 (no due process violation where the defendant could not show the police destroyed marijuana in bad faith).

Because Mr. Allerheiligen cannot establish the KBI acted in bad faith in failing to preserve potentially exculpatory evidence, his due process claim fails. Accordingly, he cannot establish plain error.

**F.     Plea Agreement**

Mr. Allerheiligen challenges his sentence, alleging the government breached the  plea agreement.  "Whether government conduct has violated a plea agreement is a question of law . . . we review de novo."     United States v. Hawley , 93 F.3d 682, 690 (10th Cir. 1996).  Plea bargains are governed by contract principles, and if any ambiguities are present, they will be resolved against the drafter.  See id.  The defendant has the burden of proving by a preponderance of the evidence the underlying facts establishing the prosecution's breach of the plea agreement.  See Cunningham v. Diesslin , 92 F.3d 1054, 1059 (10th Cir. 1996).  Because Mr. Allerheiligen asserts the government breached the plea agreement for the first time on appeal, however, our review is limited to plain error.  See United States v. Peterson , No. 99-2042, 2000 WL 725478, *1 (10th Cir. June 6, 2000).

Pursuant to the plea agreement the government agreed not to oppose a contested sentencing, thereby allowing Mr. Allerheiligen to rebut the number of marijuana plants the presentence report attributed to him for purposes of calculating his offense level.  The government also agreed not to oppose application of the safety valve provisions.

Mr. Allerheiligen contends that during a chambers meeting prior to sentencing, the government "sided with the court" when the court announced to

both parties' counsel that it would not be inclined to apply the safety valve if Mr. Allerheiligen contested the number of marijuana plants at sentencing. Aplt. Br. at 30. Mr. Allerheiligen asserts this constituted a breach of the government's agreement not to oppose a contested sentencing on the number of plants attributable to him.

Following the in-chambers meeting, Mr. Allerheiligen filed a "Motion To Reconsider Rulings Made In Chambers With Regard To Sentencing Issues." App. vol. 3 at 156. Although Mr. Allerheiligen did not argue within this motion that the government breached the plea agreement, the motion did present the district court with the factual issue of what occurred during the in chambers meeting.

In its order denying Mr. Allerheiligen's motion to reconsider, the district court made the following findings with respect to what occurred during the in-chambers meeting:

> The conversation in chambers prior to sentencing was held primarily for the defendant's benefit. The court made no rulings in chambers, but merely indicated to counsel for both sides that the court was inclined to apply the safety valve provision to this case. The court further indicated to counsel that the court did not believe defendant would be eligible for the safety valve provision if defendant continued to argue his objections with regard to the number of marijuana plants because he would no longer meet the fifth requirement for application of the safety valve by truthfully providing to the government all information and evidence the defendant has concerning the offense. See USSG §5C1.2 and 18 U.S.C. § 3553(f). This belief was based not only upon the court's review of the KBI videotape of the counting of

the marijuana plants, but also on the court's review of [inconsistent] statements provided by the defendant prior to sentencing.

App. vol. III, at 185-86 (Order, dated May 6, 1999). The court then concluded:

Upon review of the transcript of the sentencing hearing, the court finds that defense counsel never argued to the court that defendant should be allowed to contest the number of plants and still be eligible for the safety valve. Defendant's counsel also did not voice any objection, either in chambers or during the sentencing hearing, with respect to the court's view of the applicability of the safety valve. Therefore, the defendant did not make any kind of record regarding the applicability of the safety valve if he contested the number of plants. If the defendant believed that he should be allowed to contest the number of plants and still remain eligible for the safety valve, then he should have raised that argument with the court so that it could be addressed on the record.

Id. at 186-87.

There is nothing in the record that would permit us to review the court's findings with respect to what occurred during the in chambers meeting, or Mr. Allerheiligen's contention that the government breached its agreement through statements made therein. Mr. Allerheiligen did not request that the conversation in chambers be placed on the record, nor did counsel attempt to make any sort of record once the court was in session for the sentencing hearing. Where the evidentiary record is insufficient to permit assessment of an appellant's claims of error we must affirm. See Deines v. Vermeer Mfg. Co., 969 F.2d 977, 979-80 (10th Cir. 1992); see also 10th Cir. R. 10.3(B) ("When the party asserting an

issue fails to provide a record sufficient for considering that issue, the court may decline to consider it.").

## IV.  CONCLUSION

For the foregoing reasons we AFFIRM Mr. Allerheiligen's conviction and sentence.

Entered for the Court,


Robert H. Henry
Circuit Judge